ALEX G. TSE (CABN 152348)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

KATHERINE L. WAWRZYNIAK (CABN 252751)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7317
    FAX: (415) 436-7234
    katherine.wawrzyniak@usdoj.gov

Attorneys for United States of America

FILED

JAN 19 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GIOVANNI ANTONIO VILLAREAL, <br><br> Defendant. | Case No. 3:17-mj-71587 MEJ <br><br> STIPULATION AND ▇▇▇▇▇ ORDER MERGING MAGISTRATE CASE WITH CR 17-0618 RS |

1.     On November 20, 2017, this Court signed a criminal complaint charging defendant, Giovanni Antonio Villareal, with possessing a machinegun, in violation of 18 U.S.C. § 922(o) and possessing with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The Criminal Complaint and Arrest Warrant were sealed by the Court pursuant to the United States' request. A file-stamped copy of the sealed materials is attached hereto as Exhibit A.

2.     Defendant was arrested in Merced, CA, in the Eastern District of California, on November 29, 2017. He made an initial appearance on the criminal complaint in Fresno, California on November 29, 2017, pursuant to Fed. R. Crim. P. 5, and the complaint was unsealed at that time. Defendant agreed to be transported to San Francisco, CA in the custody of the U.S. Marshals.

STIP. AND PROPOSED ORD. RE COMPLAINT
3:17-mj-71587 MEJ                                         1

3. A grand jury in the Northern District of California returned an Indictment against defendant on December 12, 2017, and the matter was given case number CR 17-0618 and assigned to the Hon. Richard Seeborg. There is an ECF docket for CR 17-0618 RS.

4. On December 21, 2017, defendant appeared in the Northern District of California for the first time. He was arraigned on the Indictment and a further hearing was set for December 27, 2017. (ECF 3.)

5. On December 27, 2017, the government moved orally to unseal complaint number 3:17-mj-71587 MEJ. The Court granted the motion and ordered that filings made in the Eastern District of California be merged with the docket for CR 17-0618 RS. (ECF 6.)

6. As of January 17, 2018, it does not appear that 3:17-mj-71587 MEJ has been unsealed or merged into CR 17-0618 through ECF. The parties respectfully request that the Court direct the Clerk's Office to unseal 3:17-mj-71587 MEJ, and merge that file into the District Court criminal matter CR 17-0618 RS.

SO STIPULATED.

DATED: January 19, 2018

ALEX G. TSE
Acting United States Attorney

KATHERINE L. WAWRZYNIAK
Assistant United States Attorney

DATED: January 18, 2018

K.C. MAXWELL
Counsel for Defendant Villareal

**[PROPOSED] ORDER**

For the reasons stated above, magistrate case number 3:17-mj-71587 MEJ, captioned *United States v. Giovanni Antonio Villareal*, is unsealed. Further, the Clerk's Office for the Northern District of California is directed to merge magistrate case number 3:17-mj-71587 MEJ with criminal case number CR 17-0618 RS, also captioned *United States v. Giovanni Antonio Villareal*.

IT IS SO ORDERED.

DATED: 1-19-18

_____
HONORABLE JACQUELINE SCOTT CORLEY
United States Magistrate Judge



AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

FILED

NOV 20 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNDER SEAL

| | | |
|---|---|---|
| United States of America<br>v.<br><br>GIOVANNI ANTONIO VILLAREAL<br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No.<br><br>3-17-71587 |

MEJ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Dec. 11, 2015 & Mar. 29, 2017__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Possession of a machinegun |
| 21 U.S.C. § 841(a)(1), (b)(1)(A) | Possession with intent to distribute 50 grams or more of methamphetamine |

This criminal complaint is based on these facts:

Please see attached affidavit of ATF Special Agent Richard P. Timbang in support of Criminal Complaint.

(approved as to form _/s/ KAW_ /AUSA Katherine Wawrzyniak)

☑ Continued on the attached sheet.

_/s/ Richard P. Timbang_
*Complainant's signature*

Richard P. Timbang, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-20-17

*Judge's signature*

City and state: San Francisco California

Hon. Maria-Elena James, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Richard P. Timbang, being duly sworn, hereby declare and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since June 2004. I am presently assigned to the ATF San Francisco Metro Field Office in San Francisco, California. As a Special Agent with ATF, my responsibilities include conducting criminal investigations concerning alleged violations of Federal laws that encompass explosives, firearms, arson, and alcohol/tobacco diversion investigations as well as alleged violations of Federal narcotic laws. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program, and the ATF National Academy's Special Agent Basic Training, a combined twenty-three week regimen covering subject matters including, among other things, firearm identification, trafficking, and interdiction; confidential source recruitment/management and undercover techniques; and asset identification, seizure, and forfeiture. Since graduating from the Academy, I have attended seminars and courses during which I received further training in the laws and investigative techniques relating to pen registers; Title III; electronic and physical surveillance; firearms trafficking; interstate nexus determination of firearms and ammunition; cyber and fraud crimes; financial investigations; asset forfeiture; and narcotics investigations.

2. I have been involved in the execution of numerous state and federal firearm- and narcotics-related arrests and search warrants and have conducted investigations of illicit drug and firearms trafficking as well as the illegal possession of firearms. These investigations have resulted in the arrests of multiple individuals and the seizure of various types of evidence.

3. I am an investigative or law enforcement officer of the United States, within the

meaning of Title 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 U.S.C. § 2516.

4. I make this affidavit in support of a criminal complaint charging Giovanni Antonio Villareal (Date of Birth: 07/05/1991) (hereinafter referred to as "VILLAREAL") with two federal offenses:

  a. Distribution and Possession with Intent to Distribute 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A); and

  b. Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o).

5. The facts stated in this Affidavit are based on my personal knowledge, on my review of reports prepared by other law enforcement officers and records prepared by others, and through conversations I have had with other law enforcement officers and witnesses involved in this investigation. I have not set forth each and every fact learned during the course of this investigation in this Affidavit. Rather, I have set forth only those facts that I believe are necessary to support the lawful arrest of the individual listed in this Affidavit.

## PROBABLE CAUSE

### A. VILLAREAL'S RESIDENCE AND CRIMINAL HISTORY

6. Giovanni Antonio VILLAREAL, a/k/a "GIO", has a current California (CA) Department of Motor Vehicle ("DMV") driver's license address of 442 Harkness, San Francisco,

CA 94134.[1] Based on surveillance conducted in this case and my training and experience, I believe that VILLAREAL actually resides at 326 West 20th Street, in the city of Merced, CA, and that he also stays at 166 Naples Street,[2] in the city of San Francisco, CA which is owned by his parents.

7. I have conducted a criminal history check for VILLAREAL and learned that he has a misdemeanor conviction in 2011 for violating California Penal Code section 653(f) (solicit specified Health and Safety Code acts) and a felony conviction in 2011 for violating California Health and Safety Code section 11350(a) (possession of a narcotic/controlled substance). The felony was set aside after he completed a 3-year term of probation.

B. **OVERVIEW OF INVESTIGATION**

8. Since July 2015, ATF has been investigating VILLAREAL for suspected narcotics and firearms trafficking. Since in or around June 2016, the Drug Enforcement Administration ("DEA") has also been participating in the investigation. (ATF and DEA are referred to collectively herein as "the Investigative Agencies."). To date, VILLAREAL has sold an ATF undercover agent (UCA) a total of approximately 345 grams of powder cocaine; approximately three pounds of crystal methamphetamine; a full auto machinegun with an obliterated serial number; and two semi-automatic pistols through eleven (11) controlled purchases from September 2015 through October 2017. The table below lists the sales of guns and controlled substances from VILLAREAL to the UCA:

---

[1] Agents have been unable to determine ownership/tenancy information for this address. VILLAREAL has not been observed there.
[2] VILLAREAL has been observed at this residence on multiple occasions, including early in the morning and late at night.

| DATE | EVIDENCE PURCHASED | AMOUNT |
|---|---|---|
| 09/10/2015 | 115.9 g cocaine | $3700.00 |
| 10/20/2015 | 216.3 g crystal methamphetamine | $2100.00 |
| 11/24/2015 | 116.3 g cocaine | $3700.00 |
| 12/11/2015 | Machinegun - Anderson Manufacturing, model: AM-15, cal: 556 , s/n: obliterated | $1600.00 |
| 02/18/2016 | 243.6 g crystal methamphetamine | $2200.00 |
| 04/15/2016 | 220.0 g crystal methamphetamine | $2400.00 |
| 07/13/2016 | 228.8 g crystal methamphetamine | $2200.00 |
| 03/29/2017 | 458.0 g crystal methamphetamine | $3100.00 |
| 04/26/2017 | Kahr semi-automatic pistol, model: P40, cal: 40, s/n: FA0554 | $1100.00 |
| 08/04/2017 | 113.0 g cocaine | $3600.00 |
| 10/02/2017 | Colt semi-automatic pistol, model: Commander, caliber: .45, serial number CJ38541 | $1000.00 |

## C. CONTROLLED PURCHASE OF MACHINEGUN ON DECEMBER 11, 2015

9. Beginning in November 2015, the UCA and VILLAREAL discussed whether VILLAREAL could sell the UCA a firearm. On December 4, 2011, VILLAREAL called the UCA and said he had the gun they had discussed. On December 11, 2015, the UCA met with VILLAREAL at 2300 16th St. in San Francisco and VILLAREAL sold the UCA one AR-type assault rifle that was converted to fire full auto (a "machinegun" within the meaning of the National Firearms Act) for $1600. VILLAREAL asked to conduct the deal in an underground parking lot because he said the gun was "big" and he wanted to do the transaction where there were fewer people.

10. Once the UCA had driven underground, VILLAREAL exited the undercover vehicle and went to get the firearm. VILLAREAL returned momentarily carrying a big black garbage bag which he placed in the backseat of the undercover vehicle. VILLAREAL then returned to the passenger seat. He told the UCA, "The thing with me, I'm not going to jail bro. That's number one for me…" He also described the firearm as "nice, like a new one, and you

4

can switch it from fully into semi-auto." Based on this statement, the UCA believe that VILLAREAL knew the firearm was a machinegun. VILLAREAL then put on a glove, gave the UCA a pair of gloves, and showed the UCA the firearm, which was concealed in the garbage bag full of clothes. VILLAREAL stated that the firearm came with an extra magazine and uses .223 caliber ammunition. VILLAREAL and the UCA then discussed the UCA potentially buying additional firearms in the future.

11. On or around December 11, 2015, ATF agents examined the firearm that VILLAREAL sold to the UCA and determined that it is an Anderson Manufacturing brand firearm, model: AM-15, caliber: 5.56 mm, and with an obliterated serial number. It appeared that the receiver had been modified such that the firearm would function as a full auto machinegun. It was loaded with one "Troy Industries" 30 round magazine and with a second "Troy Industries" 30 round magazine also included in the bag. (The firearm was subsequently sent to the ATF Firearms Technology Branch and confirmed to function as a full auto machinegun.)

D.   **CONTROLLED PURCHASE OF METHAMPHETAMINE ON MARCH 29, 2017**

12. On or around March 22, 2017, the UCA sent a text message to VILLAREAL to see if VILLAREAL was available for a future transaction of two pounds of methamphetamine. The UCA texted, " Im coming up there on fri. We should link up & I might cop 2 full ones." VILLAREAL replied, "Yes yes lets do it hit me when u out here." Two days later, the UCA contacted VILLAREAL about doing the deal, but VILLAREAL said he was in "L.A." and that he was "getting that ready for you right now" and would be "out there" later that night or the following morning. I believe VILLAREAL meant that he was in Los Angeles getting the drugs

5

he planned to sell to the UC.

13. From March 27 through March 29, 2017, VILLAREAL and UCA continued to communicate intermittently with text messages and telephone conversations. On March 27, 2017, the UCA texted VILLAREAL, "wats the #s for a full one?" VILLAREAL then called the UCA and stated, "The prices went up since I talked to you...and uhh...you know you know I ain't going to do you too crazy...but uhh...if you give me 32 on it and uhh...'cuz I'm getting it for 28 and I gotta give my boy one and that's gonna be 29...yeah they went up boy...I can't get them any more than that...no less than that." The UCA then asked if he could purchase the narcotics for "three even." VILLAREAL replied, "Give me 31 'cuz I got to go all the way down and up and I got to pay for the rental and shit...If my boy do it a little lower I'll tell you."

14. On or around March 29, 2017, the UCA and VILLAREAL met and VILLAREAL sold the UCA approximately 458.0 grams of suspected crystal methamphetamine for $3100.00. Prior to the deal, agents observed VILLAREAL enter 166 Naples Street, San Francisco, CA empty handed. About 20 minutes later, VILLAREAL exited the residence carrying a brown paper bag with gold colored writing and departed the area in the Nissan Maxima. VILLAREAL then drove to meet the UCA. When VILLAREAL arrived, he had two passengers in the car, one of whom agents identified as his girlfriend. He got out of his car, retrieved a brown colored paper bag with "Gucci" printed on the bag in gold-colored writing from the back seat, then got into the UCA's car.

15. VILLAREAL and the UCA discussed VILLAREAL's marijuana delivery business and VILLAREAL gave the UCA a pre-rolled sample of a suspected marijuana cigarette. Subsequently, VILLAREAL told UCA that the crystal methamphetamine UCA wanted to purchase was in the "paper" while pointing to the brown-colored paper bag VILLAREAL had

placed in between his feet. UCA retrieved the brown colored paper bag and examined the contents. The suspected crystal methamphetamine were contained in eight (8) separate packages that were contained inside two Ziplock type clear plastic bags. The UCA and VILLAREAL then discussed potential future gun transactions.

16. ATF later weighed and processed the one pound of suspected methamphetamine. The weight was approximately 458.0 grams, including the packages in which the methamphetamine was contained.

### E. CONTROLLED PURCHASE OF ANOTHER GUN ON OCTOBER 2, 2017

17. On September 26, 2017, the UCA called VILLAREAL and asked for, "2 of the things and also a QP of the white," meaning two firearms and approximately 4 oz. of powder cocaine. VILLAREAL said he was, "going to check on the tools right now" and asked the UC if he wanted, "drills or the big tools," which the UCA understood to mean handguns or long guns. The UCA responded that they could do, "one and one."

18. VILLAREAL met with the UCA on October 2, 2017 in San Francisco, CA and sold the UCA a Colt semi-automatic pistol (s/n: CJ38541) for $1000. According to the San Francisco Police Department, that pistol and others were reported stolen on September 15, 2017 during a residential burglary.

19. I have obtained records which show that VILLAREAL has no legitimate source of income. Based on my work on this investigation since 2015, I believe that VILLAREAL is continuing the engage in firearms and drug trafficking.

### CONCLUSION

20. Based on the foregoing information, I respectfully submit that there is probable

cause to believe VILLAREAL has violated 21 U.S.C. § 841(a)(1), (b)(1)(A) and 18 U.S.C. § 922(o).

I declare under the penalty of perjury that the statements are true and correct to the best of my knowledge and belief.

Richard P. Timbang
Special Agent,
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed to and sworn before me on this __ day of November, 2017.

HONORABLE MARIA-ELENA JAMES
United States Magistrate Judge

8